IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ASHLEY MOODY, individually and on behalf of others similarly situated, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:19-CV-618-E |
| IC SYSTEM, INC., | § § § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant IC System, Inc.'s Motion to Dismiss Complaint and Compel Arbitration (Doc. No. 8). At issue is whether Defendant, a debt collector, can compel arbitration of Plaintiff Ashley Moody's Fair Debt Collection Practices Act (FDCPA) claims under an arbitration agreement between Plaintiff and T-Mobile USA, Inc. After careful consideration of the motion, the response, the reply, the supporting exhibits, the applicable law, and any relevant portions of the record, the Court denies the motion to compel.

**Factual and Procedural Background**

Plaintiff filed this purported class action against Defendant on behalf of a class of Texas consumers seeking redress for Defendant's alleged use of false, deceptive, and misleading representations or means in connection with the collection of a debt. Plaintiff allegedly incurred a debt to T-Mobile, who contracted with Defendant to collect the debt. In October 2018, Defendant sent Plaintiff a letter in an attempt to collect the debt. The letter included the following language: "This settlement offer is valid for the balance shown on

1

your account(s) as of the date of this letter. Any additional balances added after this date are not included." Plaintiff asserts the least sophisticated consumer reading this language would believe Defendant could impose additional charges and would believe she had a financial incentive to pay the debt sooner or risk owing a higher amount. Plaintiff also alleges Defendant failed to accurately state the amount of the debt. Plaintiff contends Defendant violated sections 1692e and 1692g of the FDCPA. *See* 18 U.S.C. §§ 1692e ("False or misleading representations"), 1692g ("Validation of debts").

Defendant filed a Motion to Dismiss Complaint and Compel Arbitration. Defendant asserts that when Plaintiff signed up for service with T-Mobile and also when she agreed to finance an Apple iPad Pro on August 28, 2016, she agreed to be bound by T-Mobile's "Terms and Conditions," or "T&Cs," hereinafter referred to as "the Terms." Defendant contends that under the Terms, Plaintiff waived the right to bring a class action and is required to arbitrate her claims against it.

The Terms do not require or bear any signatures. Nor do they mention Defendant by name. The document includes the following provisions:

> **WHO IS THIS AGREEMENT WITH?**
>
> These T&Cs are an agreement between you and us, T-Mobile USA, Inc., and our controlled subsidiaries, assignees, and agents.
>
>    \*\*\*
>
> **\*HOW DO I RESOLVE DISPUTES WITH T-MOBILE?**
>
> By accepting these T&Cs, you are agreeing to resolve any dispute with us through binding arbitration (unless you opt out) or small claims dispute procedures, and to waive your rights to a class action suit and jury trial. . . .

> **Dispute Resolution and Arbitration.** YOU AND WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW (AND EXCEPT AS TO PUERTO RICO CUSTOMERS), ANY AND ALL CLAIMS OR DISUPTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT. This includes claims against other parties relating to Services or Devices provided or billed to you (such as our suppliers, dealers, authorized retailers, or third party vendors) whenever you also assert claims against us in the same proceeding. . . .
>
> **Class Action Waiver.** YOU AND WE EACH AGREE THAT ANY PROCEEDINGS, WHETHER IN ARBITRATION OR COURT, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS OR REPRESENTATIVE ACTION.
>
> \*\*\*
>
> **WHAT IF I DON'T PAY ON TIME?**
>
> . . . We may use a collection agency to collect past due balances and you agree to pay collection agency fees.

Defendant asserts there is a valid arbitration agreement between it and Plaintiff. The Terms govern the relationship between Plaintiff and T-Mobile's agents, and Defendant asserts it is T-Mobile's agent. Defendant thus argues that it is part of the "We" that agreed to binding arbitration. Defendant also asserts that Plaintiff agreed to arbitrate any and all claims related to her T-Mobile service and therefore the dispute in question falls within the scope of the agreement. Defendant asks the Court to dismiss Plaintiff's complaint and order the parties to arbitration.

Plaintiff does not dispute that she accepted the Terms, received services from T-Mobile, and did not opt out of binding arbitration. She responds that there is no valid arbitration agreement between her and Defendant because Defendant has not demonstrated that it is T-Mobile's agent. Further, Plaintiff argues that her claims are not subject to

arbitration because the Terms specify that claims against entities other than T-Mobile are only arbitrable when T-Mobile is also a party to the lawsuit.  In addition, Plaintiff argues that even if Defendant is entitled to invoke the arbitration clause, her claims are not within the scope of the agreement.

In its reply, Defendant maintains it was acting as T-Mobile's agent.  Defendant also contends for the first time that even if it was not acting as an agent of T-Mobile, it is still entitled to compel arbitration based on language in the Terms stating that "any and all claims and disputes in any way related to or concerning the agreement, our privacy policy, our services, devices, or products, including any billing disputes, will be resolved by binding arbitration."

**Applicable Law**

The Federal Arbitration Act provides that a written agreement to arbitrate disputes arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The statute does not permit a trial court to exercise any discretion, "but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

To assess whether a claim must be arbitrated, the Court conducts a two-step analysis. *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 514 (5th Cir. 2019).  The first step is contract formation—whether the parties entered into *any arbitration agreement at all*. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016)*.*  If the answer is yes,

4

the Court proceeds to the second step. *Lloyd's Syndicate*, 921 F.3d at 514. The second step involves contract interpretation to determine whether a plaintiff's claim is covered by the arbitration agreement. *Kubala*, 830 F.3d at 201. Ordinarily both steps are questions for the court. *Id.* The Court applies the federal policy favoring arbitration when addressing ambiguities regarding whether a question falls within an arbitration agreement's scope, but it does not apply this policy when determining whether a valid agreement exists. *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008).

Whether the parties entered into a valid arbitration contract turns on state contract law. *Kubala*, 830 F.3d at 202; *Webb*, 89 F.3d at 258 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004). Who is actually bound by an arbitration agreement is a function of the intent of the parties, as expressed in the terms of the agreement. *Sherer*, 548 F.3d at 381; *see Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). The court should examine and consider the entire instrument so it can reconcile and give full effect to all the contract's provisions so that none of them will be rendered meaningless. *See id.* at 393-94.

Under Texas law, the party seeking to compel arbitration bears the initial burden to establish the existence of an agreement to arbitrate. *Henry v. Gonzalez*, 18 S.W.3d 684, 688 (Tex. App.—San Antonio 2000, pet. dism'd). The party seeking to compel arbitration must prove by a preponderance of the evidence that such an agreement exists. *See In re JPMorgan Chase & Co.*, 916 F.3d 494, 502–03 (5th Cir. 2019). If the party seeking to compel arbitration establishes the existence of an arbitration agreement, the burden shifts to the party opposing arbitration to show why the agreement should not be enforced. *In re Sands Bros. & Co.*, 206

S.W.3d 127, 130 (Tex. App.—Dallas 2006, no pet.); s*ee Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297, 301 (5th Cir. 2004).

## Application of the Law to the Facts

Defendant contends it is T-Mobile's agent. The Terms specify that the Terms are an agreement between "you and us." "Us" is T-Mobile and its controlled subsidiaries, assignees, and agents. Thus, according to Defendant, because it is T-Mobile's agent, it is a party to the agreement and can compel arbitration.

An agent is one who consents to the control of another to conduct business or manage some affair for the other, who is the principal. *Olympia Cap. Assocs. v. Jackson*, 247 S.W.3d 399, 413 (Tex. App.—Dallas 2008, no pet.). Courts do not presume the existence of an agency relationship, and the burden of proof is on the party asserting the existence of the relationship. *Id.* An essential element of the principal-agent relationship is the alleged principal's right to control the actions of the alleged agent. *Id.* (citing *Exxon Corp. v. Tidwell*, 867 S.W.2d 19 21 (Tex. 1993)). This right includes not only the right to assign tasks, but also the right to dictate the means and details of the process by which an agent will accomplish the task. *Id.* When one has the right to control the end sought to be accomplished, but not the means and details of how it should be accomplished, the person employed acts as an independent contractor and not as an agent. *Id.*

Defendant has not presented any evidence upon which the Court can determine that it was acting as T-Mobile's agent. Defendant suggests that the Terms expressly create an agency agreement. But Defendant is not mentioned by name in the Terms. The mere fact that the Terms contemplate use of a debt collector does not establish an agency relationship

6

between T-Mobile and Defendant. Defendant also argues that because it was authorized to collect a debt on T-Mobile's behalf, it "wielded T-Mobile's apparent authority in doing so." But an agency relationship based on apparent authority still requires the principal's right to control the alleged agent's actions. *See CNOOC Se. Asia Ltd. v. Paladin Res. (SUNDA) Ltd.*, 222 S.W.3d 889, 899 (Tex. App.—Dallas 2007, pet. denied). There is nothing in the record to show that T-Mobile had the right to control Defendant's actions, including the means and details of the debt collection. *Cf. Morante v. Am. Gen. Fin. Ctr.*, 157 F.3d 1006, 1009 (5th Cir. 1998) (setting out ways creditor had right to control collection efforts by debt collector); *Household Credit Servs., Inc. v. Driscol*, 989 S.W.2d 72, 86 (Tex. App.—El Paso 1998, pet. denied) (same). The Court cannot conclude that Defendant is T-Mobile's agent.

Defendant alternatively contends that even if it is not T-Mobile's agent, there is still a valid arbitration agreement between it and Plaintiff. Defendant makes this argument based on language in the Terms providing that any billing disputes will be resolved by arbitration. According to Defendant, T-Mobile obviously intended to include parties who collect debts on its behalf in the arbitration agreement. Defendant ignores the fact that the Terms state, "You and we each agree . . . any billing disputes . . . will be resolved by binding arbitration." Defendant has not shown that it is included in the definition of "we." Further, the Court is not persuaded by Defendant's argument that the language requiring arbitration of "any billing disputes" is broad enough to permit Defendant to compel arbitration. The terms of the arbitration agreements in the cases Defendant relies upon are distinguishable from the instant terms. *See, e.g., Sherer*, 548 F.3d at 382 ("All disputes, claims, or controversies arising from or relating to this Agreement or the relationships which result from this Agreement . . .

shall be resolved by binding arbitration."); *In re Advanta Bank Corp.*, No. 11-07-00276-CV, 2008 WL 615921, at *4 (Tex. App.—Eastland March 6, 2008, orig. proceeding) ("if a dispute of any kind arises out of your application for credit . . . either you or we or any other party that may be involved can choose to have that dispute resolved by binding arbitration"). Finally, although the Terms provide for arbitration of claims "against other parties relating to Services or Devices provided or billed to you (such as our suppliers, dealers, authorized retailers, or third party vendors)," it does so only when the plaintiff asserts claims against T-Mobile in the same proceeding. That is not the case here. The Court finds Defendant has not met its burden to establish that a valid agreement to arbitrate exists between it and Plaintiff. Accordingly, Defendant's motion is denied.

    **SO ORDERED.**
    Signed June 3, 2020.

_____
Ada Brown
UNITED STATES DISTRICT JUDGE